BRADLEY & HUBBARD MANUF'G Co. v. CHARLES PARKER Co.[1]

(*Circuit Court, D. Connecticut.* December 29, 1885.)

1. PATENTS FOR INVENTIONS—CONSTRUCTION OF CLAIM.
   Peculiarities of construction will not be construed to be distinctive features of claims, in order to sustain their validity, where neither the specification nor claims suggest that such peculiarities are a distinctive feature of the invention.

2. SAME—MATTER SHOWN, BUT NOT CLAIMED.
   A new mechanical feature of the device was shown in the drawings, but it was not described or claimed. *Held,* in view of the omission, that the patent stated nothing which the public did not already have.

3. SAME.
   The claims of reissued letters patent No. 7,628, of April 24, 1877, to the complainant, as assignee of John A. Evarts, for an improvement in extension lamp fixtures, cover nothing new, and the patent is therefore defective.

In Equity.

*Chas. E. Mitchell, O. H. Platt,* and *John S. Beach,* for plaintiff.

*Charles R. Ingersoll,* for defendant.

SHIPMAN, J. This is a bill in equity to restrain the defendant from the infringement of reissued letters patent No. 7,628, applied for April 12, 1877, and granted April 24, 1877, to the complainant, as assignee of John A. Evarts, for an improved extension lamp fixture. The original patent was dated October 31, 1876. As the decision of this case depends, in my opinion, upon the nature of the Evarts invention, as described and claimed in the reissued letters patent, I quote the entire descriptive portion of the specification as follows:

[1] Reported by Charles E. Linthicum, Esq., of the Chicago bar.

"This invention relates to an improvement in what are called 'extension lamp fixtures;' that is to say, a fixture which, when suspended, will allow the lamp to be drawn down, or rest at different elevations, and especialiy to that class in which a removable shade, of glass or porcelain, is employed. Such shades cannot be made a permanent part of the fixture, and the fixture must therefore be constructed with devices for securing the shade, and yet allow of its removal, as for cleaning or other purposes. In the usual construction, the shade serves as the counter-balance, and rises while the lamp is drawn down; hence the shade can serve its full purpose only in one predetermined position. The object of this invention is to so construct the fixture that the lamp and shade together will be drawn down; and it consists in combining in an extension lamp fixture a shade-ring, provided with a device for removably securing the shade to the ring, with the lamp attached to said shade-ring, and a weight, of ring form, to serve as a counter-balance, the said ring-shaped weight and shade-ring connected by chains or cords over a suitable support above, so that the lamp and shade may be drawn down, the weight-ring rising from the shade-ring,—all as more fully hereinafter described. A is the shade-ring, from which chains or cords, $a$, extend up over pulley, $v$, $b$; thence down, and the other end of the chains attached to a weight, B, in shape a ring, the opening in which corresponds substantially to the opening in the shade-ring; and so that, by drawing down this shade-ring, the weight will rise, as indicated in broken lines; but when the shade-ring is at its highest elevation then the weight-ring may rest thereon. As the weight rises, it will, owing to its ring or open shape, pass over the smoke-bell, F, and is not therefore limited by the smoke-bell in such rising. The shade, C, is of the usual form for such shades, and generally made from glass, porcelain, or similar material, a flange on its upper edge entering the ring, A, and so as to rest therein, and secured by a set-screw, $d$, or other suitable device, which will hold the shade in place, and yet allow of its being removed or replaced as occasion may require. E, the lamp-holder, is attached to the shade-ring, and so as to move up and down with the shade-ring and shade, as indicated in broken lines. To this holder the lamp is secured in the usual manner. The ring-weight, B, is made of sufficient weight to counterbalance the shade, its ring, and lamp, and so that the lamp may rest at any position between its two extremes."

The claims are as follows:

"(1) The combination in an extension lamp fixture of the shade-ring, a device for removably securing the shade to the ring, the lamp attached to said shade-ring, the ring-shaped weight and shade-ring, connected by chains or cords over a support above, substantially as described. (2) The combination in an extension lamp fixture of the shade-ring, a device for removably securing the shade to the ring, a shade constructed at its upper edge for attachment to said shade-ring, and engagement with said securing device, the lamp attached to said shade-ring, the ring-shaped weight and shade-ring, connected by chains or cords over a support above, substantially as described."

The lamp met the recognized wants of the public, displaced other one-light extension kerosene fixtures then in the market, and has had a wonderful sale. In 1883 the defendant began to infringe by making an imitation of the important features of the patented lamp. It is clearly proved that, in 1865, Mitchell, Vance & Co., of New York city, made and sent to their sales-room for sale one one-light extension lamp, constructed substantially like the Evarts lamp, except that the porcelain shade was not fastened to the shade-ring, and except also that the chains were indirectly connected with the shade-ring by being

hooked into the upper ends of the arms of the harp, which arms also extended through the downwardly projecting flange of the shade-ring. By the method of construction there is no way of removing the shade except by detaching the chains, when the suspending device would also be disarranged. This lamp was subsequently entered by its number in the printed price-list of Mitchell, Vance & Co., but was never shown nor described in their printed descriptive catalogue. In the Evarts lamp the chains are directly attached to the upper surface of the shade-ring, and the two upper ends of the harp are removably secured to the shade-ring by screws. The harp and the shade can each be detached from the shade-ring without interfering with the chains, and the ring and weight will still be suspended without derangement of the suspending devices. This arrangement is far more convenient than the one shown in the Mitchell and Vance device, and this very convenience may have given to the Evarts lamp its great commercial success.

The plaintiff earnestly contends that the Mitchell and Vance lamp is not an anticipation of the patented invention by reason of these differences, and that the Evarts patent, fairly construed, means that shade-ring and weight-ring must be directly connected to each other by the chains, and not through the intervention of the arms of the harp. Such a construction does not seem to me to be tenable, because I cannot find in the patent a suggestion that the patentee thought that this peculiarity of construction was a distinctive feature of his invention. The object of the invention was so to construct an extension lamp, especially of the class having a porcelain shade, which must be removably secured to the shade support, that the shade and lamp could be drawn down together; and this was accomplished by having a ring-formed weight to serve as a counter-balance, the two rings being connected by chains over a suitable support above, so that the lamp and shade may be drawn down while the weight-ring rises from the shade-ring. The shade is to be removably secured to the shade-ring; the lamp is to be attached to the shade-ring, so as to move up and down with the shade; the weight-ring and the shade-ring are to be connected by chains, so that, as the lamp and shade are drawn down, the weight-ring rises; but nothing is said as to the fact that the two rings are to be directly connected with each other, so that the other parts of the fixture may be disconnected without deranging the suspending devices.

This construction was not, in the mind of the patentee, a part of the essence of his invention, and the effect produced by the construction was not a part of the expressed object of the invention. The direct attachment of the chains to the shade-ring was shown in the drawings, and was a mechanical feature of the device; but it was not made a distinctive part of the patented improvement. The patent did not claim, and the specification did not describe, any particular mode or method of the connection of the two rings.

Without reference to the question whether the improvement was a patentable invention, the advance which the patentee made was important, though apparently slight. He made an universally popular lamp, where none, which met the public demand, had previously existed, and had he known or appreciated the particulars wherein his lamp was in fact an advance he probably would have stated them in his patent.

In consequence of the omission, I think that his patent claims nothing which the public did not have previously, and that the title of his assignee to the exclusive use of his actual improvement is therefore defective. The bill is dismissed.